UNITED STATES of America, Plaintiff,

v.

Cameron MARCRUM, Defendant.

No. 13–020224–JPM–1.

United States District Court, W.D. Tennessee, Western Division.

July 17, 2013.

Chris Scruggs, U.S. Attorney's Office, Memphis, TN, for Plaintiff.

Patricia A. Woods, Law Office of Patricia A. Woods, Memphis, TN, for Plaintiff and Defendant.

## ORDER DENYING BOND

JON P. McCALLA, Chief Judge.

Before the Court is the Government's Motion for Stay of Bond Order and Appeal

of Magistrate Judge's Order Granting Bond in this Matter, filed June 28, 2013. (ECF No. 20.) For the following reasons, after careful consideration of the record, the relevant law, and the briefs of the parties, the Court REVOKES the Order Granting Bond and ORDERS that Defendant Cameron Marcrum be detained without bond pending trial.

## I. BACKGROUND

The instant case was commenced by a three-count indictment (the "Indictment") against Defendants Cameron Marcrum ("Marcrum"), Jonathan Martin, and Crystal McCracken on June 24, 2013. (ECF No. 3.) Marcrum was charged with the following three counts related to the distribution of a controlled-substance analogue [1]: (1) conspiracy to distribute a controlled substance in violation of 21 U.S.C. § 841(a)(1); (2) conspiracy to distribute a controlled substance in violation of 21 U.S.C. § 841(a)(1) and § 846; and (3) conspiracy to engage in money laundering with the intent to engage in drug trafficking in violation of 18 U.S.C. § 1956(a)(2)(A) and § 1956(h). (Id. at 1–3.)

On June 28, 2013, Magistrate Judge Tu M. Pham held a detention hearing as to Marcrum. (See ECF No. 21; ECF No. 42.) The Government asked that Marcrum "be denied bond and kept in custody until the completion of his federal case." (Detention Hr'g Tr., ECF No. 42, at 3:23–25.) The Government called three witnesses involved with the investigation of Marcrum: Parris Quon, an agent with IRS Criminal Investigations, who testified about the investigation into Marcrum's finances (id. at 5:1–11:20); Albert Cranor, an agent with the Postal Inspection Service, who testified about the "controlled delivery" of the controlled-substance analogue to Marcrum and the February 2012 search of Marcrum's residence and storage facility which contained controlled-substance analogues (id. at 12:14–21:17); and Michael Ciesliga ("Ciesliga"), an agent with the West Tennessee Violent Crime and Drug Task Force, who testified about Marcrum's arrest on June 25, 2013, Marcrum's business in selling controlled-substance analogues, and bank accounts owned by Marcrum under the name "Empire Fights" (id. at 21:22–32:22). Marcrum did not put on any proof at the hearing. (Id. at 32:25–33:2.) After the parties presented their arguments (id. at 33:3–41:23), the Magistrate Judge, relying on the hearing testimony and pretrial report (the "PTR"),[2] determined that Marcrum was entitled to release pending trial based on the appropriate § 3142(g) factors (id. at 48:2–7). The Magistrate Judge set the

---

1. "A controlled substance analogue shall, to the extent intended for human consumption, be treated, for the purposes of any Federal law as a controlled substance in Schedule I." 21 U.S.C. § 813. A "controlled substance analogue" is defined as a substance

(i) the chemical structure of which is substantially similar to the chemical structure of a controlled substance in schedule I or II;

(ii) which has a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance in schedule I or II; or

(iii) with respect to a particular person, which such person represents or intends to have a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance in schedule I or II.

21 U.S.C. § 802(32)(A).

2. The pretrial report is not located on the docket.

bond at $50,000 to be secured by a corporate surety. (*Id.* 48:22–49:6.)

On June 28, 2013, the Government filed a Motion requesting that this Court "stay the order entered on June 28, 2013, by United States Magistrate Judge Tu M. Pham, which denied the Government's request for pretrial detention without bond in the instant case" and "to hold a detention hearing on this matter." (ECF No. 20 at 1.) Following a hearing regarding the Government's Motion on July 2, 2013, this Court ordered further briefing on the bond issue. (*See* ECF No. 36.) On July 8, 2013, Marcrum filed his Memorandum of Law in Support of Bail (ECF No. 40) and the Government filed its Memorandum Regarding Presumed Detention (ECF No. 41).

## II. LEGAL STANDARD

■ Pursuant to 18 U.S.C. § 3145, a district court may review a magistrate judge's release order on motion by the government. 18 U.S.C. § 3145(a). A magistrate judge's release order is reviewed de novo. *See United States v. Villegas*, No. 3:11–CR–28, 2011 WL 1135018, at *4 (E.D.Tenn. Mar. 25, 2011); *see also United States v. Romans*, No. 00–5456, 2000 WL 658042, at *1 (6th Cir. May 9, 2000) (affirming district court that had reviewed the magistrate judge's detention order de novo). Accordingly, the Court must "engage in the same analysis, with the same options . . . as the magistrate judge." *Villegas*, 2011 WL 1135018, at *4 (quoting *United States v. Yamini*, 91 F.Supp.2d 1125, 1129 (S.D.Ohio 2000)) (internal quotation marks omitted).

A defendant should be detained without bond pending trial if a "judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the commu-

nity." 18 U.S.C. § 3142(e)(1). "A judicial officer's finding of dangerousness must be 'supported by clear and convincing evidence.'" *United States v. Stone*, 608 F.3d 939, 945 (6th Cir.2010) (quoting 18 U.S.C. § 3142(f)(2)(b)).

■ This default standard, however, is modified where the defendant is "particularly dangerous." *Id.* If a "judicial officer finds that there is probable cause to believe that the [defendant] committed" one of the crimes listed in § 3142(e)(3)(A)-(E), a presumption in favor of detention arises. *Id.* (citing 18 U.S.C. § 3142(e)(3)). "A grand jury indictment, by itself, establishes probable cause to believe that a defendant committed the crime with which he is charged." *Stone*, 608 F.3d at 945; *accord United States v. Hazime*, 762 F.2d 34, 37 (6th Cir.1985). Accordingly, "when the government submits an indictment including charges listed in section 3142(e)(3), it has fulfilled its burden to establish the presumption in favor of detention." *Stone*, 608 F.3d at 945.

This presumption, however, may be rebutted by the defendant. *See* 18 U.S.C. § 3142(e)(3). In rebutting the presumption, the defendant must come "forward with evidence that he does not pose a danger to the community or a risk of flight." *Stone*, 608 F.3d at 945 (quoting *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir.2001)) (internal quotation marks omitted). While the defendant has the "burden of production," the "burden of persuasion" stays with the government. *Id.* The defendant's "burden of production 'is not heavy.'" *Id.* (quoting *United States v. Stricklin*, 932 F.2d 1353, 1355 (10th Cir.1991)).

■ Even if a defendant has satisfied his burden of production, "the presumption favoring detention does not disappear entirely, but remains a factor to be consid-

ered among those weighed by the district court." *Id.* (quoting *Mercedes,* 254 F.3d at 436) (internal quotation marks omitted). Whether or not the presumption applies, "the government's ultimate burden is to prove that no conditions of release can assure that the defendant will appear and to assure the safety of the community." *Id.* at 946. In making this determination, a court must consider the following factors: (1) the natures and circumstances of the offense; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g)(1)-(4). "Pretrial detention can be ordered based on a judicial finding of either substantial danger to the community or risk of flight; only one is required." *United States v. Hernandez,* No. 1:02–CR–006, 2002 WL 1377911, at *3 (E.D.Tenn. Feb. 27, 2002) (citing *United States v. Portes,* 786 F.2d 758, 765 (7th Cir.1985)).

## III. ANALYSIS

The Government asserts that the Magistrate Judge erred in denying the Government's request for pretrial detention without bond. (ECF No. 20 at 1.) The Court considers the following in turn: (1) whether the Government has raised the presumption in favor of detention without bond; (2) whether Marcrum has produced some evidence to rebut this presumption; and (3) whether the Government has met its burden of persuasion in showing that Marcrum should be detained without bond pending trial.

### A. The Government Has Raised the Presumption

As previously stated, if a "judicial officer finds that there is probable cause to be-

lieve that the [defendant] committed" one of the offenses listed in § 3142(e)(3), a presumption in favor of detention without bond arises. 18 U.S.C. § 3142(e)(3)(A)-(E). One of the listed offenses in § 3142(e)(3) is "an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. § 801 *et seq.*), the Controlled Substances Import and Export Act (21 U.S.C. § 951 *et seq.*), or chapter 705 of title 46." 18 U.S.C. § 3142(e)(3)(A). In the instant case, Marcrum is charged in the Indictment with conspiring to distribute two varieties of controlled-substance analogues in violation of 21 U.S.C. § 841(a)(1) and § 846. (ECF No. 1 at 1–3.) If convicted of these offenses, Marcrum faces a sentence of not more than twenty years of imprisonment. (ECF No. 41 at 1; *accord* Detention Hr'g Tr., ECF No. 42, at 42:7–12.) Accordingly, there is probable cause, based on the Indictment, to believe that Marcrum committed one of the offenses listed in § 3142(e)(3). *See* 18 U.S.C. § 3142(e)(3)(A). Therefore, the statutory presumption in favor of detention is triggered. (*See* Detention Hr'g Tr., ECF No. 42, 42:13–18.)

### B. Marcrum Has Rebutted the Presumption

■ The Government argues that Marcrum has not submitted sufficient evidence to rebut the presumption in favor of detention and, as a result, Marcrum should be detained without bond pending trial. (ECF No. 41 at 2.) In support, the Government asserts that at the previous hearings, Marcrum did not submit any evidence to the Court to show that he is neither "particularly dangerous" nor poses a "risk of flight." (*Id.*)

Marcrum asserts that he has produced some evidence that he will appear and that

he will not pose a threat to the community. (ECF No. 40 at 6.) Accordingly, Marcrum argues that the Magistrate Judge's finding that the presumption in favor of detention was rebutted and his setting of a $50,000 bond should not be disturbed. (*Id.* at 1.)

In the instant case, Marcrum has produced some evidence that he is neither a danger to the community nor a flight risk. At the detention hearing, Marcrum's counsel stated that Marcrum had left on multiple international trips after his home was raided in February 2012, and returned home each time and that this demonstrated that he was not a flight risk. (ECF No. 42 at 41:4–15). Further, the PTR[3] contains the following evidence in rebuttal: that Marcrum has very little criminal history and no convictions other than a charge from 2001, when Marcrum was eighteen-years old, for possession of a controlled substance with the intent to distribute, which resulted in a $1,000 dollar fine (*see* PTR at 5; *see also* Detention Hr'g Tr., ECF No. 42, at 45:1–10); and that Marcrum is from Memphis and has family in the area, including two young sons whom he visits weekly (*see* PTR at 1–2; *see also* Detention Hr'g Tr., ECF No. 42, at 44:8–11). Although this is not strong evidence that Marcrum is neither a danger to the community nor a flight risk, the defendant's burden of production "is not heavy." *See Stone*, 608 F.3d at 945. Accordingly, the evidence produced by Marcrum is sufficient to rebut the statutory presumption in favor of detention.

### C. The Government Has Met Its Burden of Persuasion

Even though Marcrum has satisfied his burden of production, by producing some evidence to rebut the statutory presumption, the Court must still consider the presumption as one of the § 3142(g) factors that the district court must weigh in determining whether a defendant may be detained pending trial. *See Stone*, 608 F.3d at 945. A determination that a defendant poses a danger or is a flight risk "must be 'supported by clear and convincing evidence.'" *See Id.* (quoting 18 U.S.C. § 3142(f)(2)(b)). The Court considers the relevant factors in turn.

### 1. Nature and Circumstances of the Offense

■ The indictment charged Marcrum with conspiring to possess, with the intent to distribute, controlled-substance analogues in violation of 21 U.S.C. § 841(a)(1) and § 846, and conspiracy to engage in drug trafficking in violation of 18 U.S.C. § 956(a)(2)(A) and § 1956(h). (*See* ECF No. 3 at 1–3.) During the detention hearing, the Government asserted that, as a result of its investigation into Marcrum, it searched his residence and storage facility in February 2012 (Detention Hr'g Tr., ECF No. 42, at 45:1–10); that the Government found emails indicating that Marcrum was purchasing controlled-substance analogues from China (*id.* at 6:3–24); that Marcrum spent in excess of $500,000 via direct wire transfer from his bank accounts in purchasing controlled-substance analogues from China (*id.* at 7:9–22); that Marcrum was purchasing rental properties using straw purchasers to launder money from his bank accounts (*id.* at 8:2–10, 23–25, 9:1–16); that Marcrum possessed controlled-substance analogues in both his residence and storage facility and ap-

---

**3.** The Court considers the pretrial services report as "evidence" in analyzing whether the defendant has met his burden of production in rebutting the statutory presumption in favor of detention. *See United States v. Watson,* No. 10–cr–30323, 2010 WL 3272934, at *3 (E.D.Mich. Aug. 12, 2010); *see also United States v. Robinson,* 733 F.Supp. 280 (N.D.Ill. 1990).

peared to be preparing controlled-substance analogues for sale in his residence, including "spice" [4] (*id.* at 14:25–15:15); and that during Marcrum's arrest on June 26, 2013, his residence was searched and the Government found $20,770 in cash, packaging materials for cannabinoid and methcathinone analogues, and drug ledgers (*id.* at 24:19–26:16).

The offense at issue in this case is a violation serious enough to raise a rebuttable presumption in favor of pretrial detention pursuant to 18 U.S.C. § 3142(e)(3). "This presumption represents the belief of Congress that in the majority of serious Controlled Substance Act offenses, there is an increased risk of flight or danger to the community, and in particular, the danger that the defendant will resume drug trafficking activities while released." *United States v. Williams*, 948 F.Supp. 692, 693 (E.D.Mich.1996) (citing *United States v. Hare*, 873 F.2d 796, 798) (5th Cir.1989); *see also United States v. Hinton*, 113 Fed. Appx. 76, 78 (6th Cir.2004) ("Congress has determined that drug offenders pose a special risk of flight and dangerousness to society." (internal quotation marks omitted)). Additionally, in § 3142(g)(1) Congress directs courts to consider, in analyzing the nature and circumstances of the offense, "whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device." Because this case involves the distribution of a controlled-substance analogue, the nature and circumstances of this case weigh in favor of detention.

### 2. Weight of the Evidence

█ The weight-of-the-evidence factor "goes to the weight of the evidence of dangerousness, not the weight of the evidence of the defendant's guilt." *Stone*, 608 F.3d at 948. At the detention hearing, the Government produced evidence that Marcrum continued to engage in illegal activity even after his home had been searched in February 2012 (Detention Hr'g Tr., ECF No. 42, at 25:2–28:17, 34:5–12); that Marcrum attempted to hide assets from the Government, including bank accounts created under a different name (*id.* at 32:1–16; 38:17–23); that the agents had to break down the door in order to arrest Marcrum on June 26, 2013, and found him flushing marijuana down the toilet (*id.* at 24:19–25:10); and that Marcrum has international connections (*id.* at 6:14–17; 7:9–15) and may have other assets not yet known to the Government (*id.* at 8:2–10; 39:16–18).

Accordingly, and given the facts set forth in the other factors, the Court finds that the Government has presented clear and convincing evidence that Marcrum is a danger to the community as he may continue to engage in illegal activity and that Marcrum is a risk of flight as he may have additional resources and connections to leave the country. Therefore, the Court finds that the weight-of-the-evidence factor weighs in favor of detention.

### 3. History and Characteristics of Defendant

In considering the history and characteristics of the defendant, a court should consider the following:

(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

4. "Spice" is a synthetic cannabinoid. (Detention Hr'g Tr., ECF No. 42, at 17:7–12.)

(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law.

18 U.S.C. § 3142(g)(3).

The Court finds that the following evidence regarding Marcrum's history and characteristics weighs against detention pending trial: that Marcrum was born in Memphis, Tennessee, and has lived in Memphis for his entire life, other than from 1987 to 1995 (see PTR at 1; see also Detention Hr'g Tr., ECF No. 42, at 44:8–11); that Marcrum has two sons from a previous relationship that reside in Memphis that he sees on a weekly basis (see PTR at 1–2); that Marcrum has a minimal criminal history, involving only a single conviction for possession of a controlled substance with the intent to distribute at the age of eighteen, which carried a $1,000 fine (see id. at 5; see also Detention Hr'g Tr., at 44:19–45:12); that Marcrum was not on probation or parole when he was arrested for the current offense (see Detention Hr'g Tr., at 45:13–19); and that Marcrum has no history of violence (see PTR at 5).

The Court finds that the following evidence regarding Marcrum's history and characteristics weighs in favor of detention pending trial: that Marcrum has little contact with his father, and no contact with his mother, who both reside in Memphis (see PTR at 1); that Marcrum is the self-employed owner of fourteen rental properties that have been seized by the Government (see id. at 2); that Marcrum first used marijuana at the age of fifteen and has used this drug on a daily basis until his arrest on June 26, 2013 (see id. at 4); and that, just before he was arrested, Marcrum attempted to destroy evidence by flushing marijuana down the toilet (see Detention Hr'g Tr., ECF No. 42, at 25:2–10).

While this factor is close, the Court finds that Marcrum's history and characteristics weigh slightly against detention.

### 4. Danger to the Community

At the detention hearing, the Government proffered evidence that Marcrum had continued to engage in drug trafficking even after his residence and storage facility were searched in February 2012 and even after being notified by the United States Department of Justice that he was under investigation on March 7, 2012. (See Detention Hr'g Tr., ECF No. 42, at 25:2–26:16, 34:3–12; ECF No. 40 at PageID 83.) Marcrum disputes the Government's assertion that he continued to engage in criminal behavior. (ECF No. 40 at 3–4.) In support of this assertion, Marcrum points to the cross-examination of Agent Ciesliga where, in response to the question of whether the analogues found in the February 2012 search were illegal, Ciesliga replied "No, sir." (Id. at 3; Detention Hr'g Tr., ECF No. 42, at 20:10–12.) Marcrum also submits the affidavits of Jonathan Martin and Micah Yarbrough, who state that Marcrum instructed them "to get rid of" the illegal product and bought new legal product "when the laws changed regarding 'Spice.'" (Yarbrough Aff., ECF No. 40, ¶ 4; Martin Aff., ECF No. 40, ¶ 4.)

The Court, however, is not convinced by Marcrum's argument. First, after Ciesliga stated that the substances were not illegal in February 2012, he went on to state, on re-direct, that as analogues of controlled substances, the substances found were illegal to possess and distribute. (See Detention Hr'g Tr., ECF No. 42, at 20:25–21:8.) Accordingly, although not "banned substances" themselves, as analogues of banned substances they are illegal to possess. See 21 U.S.C. § 813. Sec-

ond, even though state law may have changed regarding controlled-substance analogues, federal law has remained consistent since the Federal Analog Act, 21 U.S.C. § 813, part of the Controlled Substances Act of 1986, that any analogue of a controlled substance is treated as a Schedule I controlled substance. Accordingly, changes in state law do not impact this federal case.

The Court, therefore, finds that although Marcrum has no substantive criminal history or history of violent behavior, Marcrum still poses a threat to the community. *See United States v. Rodriguez,* 950 F.2d 85, 89 (2d Cir.1991) ("Although a prior record of violence eases the government's burden of showing dangerousness, it is not essential."); *see also Stone,* 608 F.3d at 950. The Government has provided clear and convincing evidence that Marcrum continued to engage in importing and preparing controlled-substance analogues after he was informed of the investigation. Continued drug dealing constitutes a danger to the community. Because Marcrum continued to engage in the distribution of controlled-substance analogues after the search of his residence in February 2012, until his arrest on June 26, 2013, the Court finds that Marcrum poses a danger to the community and, as a result, this factor weighs in favor of detention. *See, e.g., Hare,* 873 F.2d at 799 ("[C]ontinued drug dealing does constitute a danger and threat to the community, and that fact alone justifies detention."); *United States v. Sazenski,* 806 F.2d 846, 848 (8th Cir. 1986); *United States v. Portes,* 786 F.2d 758, 765 (7th Cir.1985); *United States v. Leon,* 766 F.2d 77, 81 (2d Cir.1985); *United States v. Williams,* 753 F.2d 329, 335 (4th Cir.1985).

## IV. CONCLUSION

For the foregoing reasons, the Court finds that there is "clear and convincing evidence" that there is "no condition or combination of conditions that will reasonably assure the appearance of the person as required and the safety of other persons and the community." 18 U.S.C. § 3142(e). Accordingly, the Court ORDERS that Defendant Marcrum be detained without bond pending trial.